## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE RULE 45 SUBPOENA<br><br>in the matter of<br><br>THE ROMAN CATHOLIC<br>ARCHDIOCESE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KATHLEEN SEBELIUS, in her official capacity as Secretary, United States Department of Health and Human Services, *et al.*,<br><br>Defendants. | Case: 1:13-mc-00318<br>Assigned To : Boasberg, James E.<br>Assign. Date : 4/4/2013<br>Description: Miscelleanous<br><br>[Underlying Civil Action filed in the U.S. District Court for the Eastern District of New York<br>Case No. 1:12-CV-02542-BMC] |

### EXECUTIVE OFFICE OF THE PRESIDENT'S
### MOTION TO QUASH SUBPOENA DUCES TECUM

The Executive Office of the President respectfully moves this Court to quash a subpoena *duces tecum* issued to it by the Plaintiffs in a civil action pending in the Eastern District of New York. The basis for this Motion is set forth in the attached Memorandum in Support of Motion to Quash Subpoena Duces Tecum. A proposed order has been submitted. Counsel for Plaintiffs advises that Plaintiffs oppose the relief requested.

Dated: April 4, 2013.          Respectfully submitted

STUART F. DELERY
Acting Assistant Attorney General
IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney
JENNIFER RICKETTS
Director
SHEILA M. LIEBER
Deputy Director

M. ANDREW ZEE (CA Bar No. 272510)
BENJAMIN L. BERWICK (MA Bar No. 679207)
MICHELLE R. BENNETT (CO Bar No. 37050)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7314
Washington, D.C. 20530
Tel: (202) 305-8648
Fax: (202) 616-8470
Email: m.andrew.zee @usdoj.gov

*Attorneys for the Executive Office of the President*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2013, this Motion and all attachments were served on the

following by e-mail and by first-class mail, postage prepaid:

Toni-Ann Citera, Esq.
Jones Day
222 E. 41st Street
New York, NY 10017
tcitera@jonesday.com

*Attorney for Plaintiffs/Requesters*

M. Andrew Zee

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE RULE 45 SUBPOENA | ) ) ) Miscellaneous No. _____ |
| in the matter of | ) ) |
| THE ROMAN CATHOLIC ARCHDIOCESE OF NEW YORK, *et al.*, | ) ) ) [Underlying Civil Action filed in the U.S. District Court for the Eastern District of New York |
| Plaintiffs, | ) Case No. 1:12-CV-02542-BMC] |
| v. | ) ) ) |
| KATHLEEN SEBELIUS, in her official capacity as Secretary, United States Department of Health and Human Services, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

## [PROPOSED] ORDER

Upon consideration of the Executive Office of the President's Motion to Quash

Subpoena Duces Tecum,

IT IS ORDERED that the Motion is GRANTED.

Dated:

_____

UNITED STATES DISTRICT JUDGE

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE RULE 45 SUBPOENA | Miscellaneous No. _____ |
| in the matter of | |
| THE ROMAN CATHOLIC ARCHDIOCESE OF NEW YORK, *et al.*, | [Underlying Civil Action filed in the U.S. District Court for the Eastern District of New York |
| Plaintiffs, | Case No. 1:12-CV-02542-BMC] |
| v. | |
| KATHLEEN SEBELIUS, in her official capacity as Secretary, United States Department of Health and Human Services, *et al.*, | |
| Defendants. | |

**EXECUTIVE OFFICE OF THE PRESIDENT'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA DUCES TECUM**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

I.      STATUTORY AND REGULATORY FRAMEWORK ..................................................... 3

II.     UNDERLYING PROCEEDINGS IN THE EASTERN
        DISTRICT OF NEW YORK ............................................................................................. 5

III.    PLAINTIFFS' SUBPOENA ............................................................................................. 7

ARGUMENT .............................................................................................................................. 8

  I.    THE SUBPOENA IS INVALID BECAUSE THE
        NEW YORK DISTRICT COURT LACKS
        JURISDICTION OVER THE UNDERLYING CASE ......................................................... 8

  II.   PLAINTIFFS' SUBPOENA MUST BE QUASHED BECAUSE
        IT FAILS TO MEET THE STANDARDS OF RULE 45, LET
        ALONE THE MORE STRINGENT STANDARDS APPLICABLE
        TO THE EXECUTIVE OFFICE OF THE PRESIDENT ................................................... 16

        A.   Applicable Standards ............................................................................................. 16

        B.   The subpoena does not meet Rule 45's ordinary standards
             for discovery in civil litigation, let alone the more "exacting standards"
             applicable to a subpoena issued to the Executive Office of the President ........... 17

             1.   Plaintiffs have not and cannot show that the
                  documents sought by their subpoena are necessary
                  for, or relevant to, their claims in the underlying action ........................... 18

             2.   Compliance with Plaintiffs' overbroad subpoena
                  would impose an undue burden on the Executive
                  Office of the President ................................................................................. 20

             3.   On its face, the subpoena seeks information that
                  is subject to a claim of privilege ................................................................. 22

CONCLUSION ........................................................................................................................... 23

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Am. Petroleum Inst. v. EPA,*
  683 F.3d 382 (D.C. Cir. 2012)..............................................................................................12

*Archdiocese of St. Louis v. Sebelius,*
  No. 4:12-cv-924-JAR, 2013 WL. 328926 (E.D. Mo. Jan. 29, 2013)......................................11

*Belmont Abbey Coll. v. Sebelius,*
  878 F. Supp. 2d 25 (D.D.C. 2012).........................................................................................11

*Camp v. Pitts,*
  411 U.S. 138 (1973)..............................................................................................................18

*Catholic Diocese of Biloxi v. Sebelius,*
  No. 1:12-cv-00158, 2012 WL. 6831407 (S.D. Miss. Dec. 20, 2012)......................................11

*Catholic Diocese of Nashville v. Sebelius,*
  No. 3-12-0934, 2012 WL. 5879796 (M.D. Tenn. Nov. 21, 2012)....................................11, 13

*Catholic Diocese of Peoria v. Sebelius,*
  No. 1:12-cv-01276, 2013 WL. 74240 (C.D. Ill. Jan. 4, 2013)..........................................11, 13

*Cheney v. U.S. Dist. Court for D.C.,*
  542 U.S. 367 (2004).................................................................................................... *passim*

*Clapper v. Amnesty Int'l USA,*
  133 S. Ct. 1138 (2013)................................................................................................ *passim*

*Colo. Christian Univ. v. Sebelius,*
  No. 11-cv-03350-CMA-BNB, 2013 WL. 93188 (D. Colo. Jan. 7, 2013) .............10, 11, 13, 15

*Conlon v. Sebelius,*
  No. 1:12-cv-3932, 2013 WL. 500835 (N.D. Ill. Feb. 8, 2013)................................................11

*Eternal Word Television Network Inc. v. Sebelius,*
  No. 2:12-cv-00501-SLB, 2013 WL. 1278956 (N.D. Ala. Mar. 25, 2013) ..............................11

*Franciscan Univ. of Steubenville v. Sebelius,*
  No. 2:12-cv-00440-ALM-MRA, 2013 WL. 1189854
  (S.D. Ohio Mar. 22, 2013) .....................................................................................................11

*Geneva Coll. v. Sebelius,*
  No. 2:12-cv-207, 2013 WL. 838238 (W.D. Pa. Mar. 6, 2013)................................................11

ii

*Houston Bus. Journal, Inc. v. Office of the Comptroller of Currency,*
   86 F.3d 1208 (D.C. Cir. 1996) ............................................................................................9, 11

*In re Korean Air Lines Disaster,*
   829 F.2d 1171 (D.C. Cir. 1987) ...............................................................................................12

*Legatus v. Sebelius,*
   No. 12-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012) .........................................11, 13

*Linder v. Calero-Portocarrero,*
   183 F.R.D. 314 (D.D.C. 1998) .................................................................................................21

*Most Reverend David A. Zubik v. Sebelius,*
   No. 2:12-cv-00676, 2012 WL. 5932977 (W.D. Pa. Nov. 27, 2012) ......................10, 11, 13, 15

*Most Reverend Lawrence T. Persico v. Sebelius,*
   No. 1:12-cv-00123-SJM, 2013 WL. 228200 (W.D. Pa. Jan. 22, 2013) ....................................11

*Nebraska v. U.S. Dep't of Health & Human Services,*
   877 F. Supp. 2d 777 (D. Neb. 2012) .......................................................................................11

*N.C. Right to Life, Inc. v. Leake,*
   231 F.R.D. 49 (D.D.C. 2005) ...................................................................................................16

*Roman Catholic Archdiocese of N.Y. v. Sebelius,*
   __ F. Supp. 2d __, 2012 WL 6042864 (E.D.N.Y. Dec. 4, 2012) .............................6, 10, 14, 15

*Roman Catholic Archbishop of Washington v. Sebelius,*
   --- F. Supp. 2d ---, 2013 WL. 285599 (D.D.C. Jan. 25, 2013) ...........................................11, 12

*Roman Catholic Diocese of Dallas v. Sebelius,*
   Civil Action No. 3:12-cv-01589-B, 2013 WL. 687080
   (N.D. Tex. Feb. 26, 2013) ........................................................................................................11

*In re Sealed Case,*
   121 F.3d 729 (D.C. Cir. 1997) .................................................................................................22

*U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.,*
   487 U.S. 72 (1988) .....................................................................................................................9

*United States v. Morton Salt Co.,*
   338 U.S. 632 (1950) .....................................................................................................................9

*United States v. Nixon,*
   418 U.S. 683 (1974) ..................................................................................................................16

*Univ. of Notre Dame v. Sebelius,*
  No. 3:12-cv-00523, 2012 WL. 6756332 (N.D. Ind. Dec. 31, 2012)......................10, 11, 13, 15

*In re Verizon Internet Services,*
  257 F. Supp. 2d 244 (D.D.C. 2003).........................................................................................9

*Watts v. S.E.C.,*
  482 F.3d 501 (D.C. Cir. 2007).........................................................................................17, 21

*Wheaton College v. Sebelius,*
  703 F.3d 551 (D.C. Cir. 2012)...................................................................................... *passim*

*Wheaton College v. Sebelius,*
  887 F. Supp. 2d 102 (D.D.C. 2012)................................................................................11, 13

*Wyoming v. U.S. Department of Agriculture,*
  208 F.R.D. 449 (D.D.C. 2002)...............................................................................................21

## FEDERAL STATUTES

28 U.S.C. § 1292(b) ........................................................................................................................7

42 U.S.C. § 300gg-13 .....................................................................................................................3

Pub. L. No. 111-148, 124 Stat. 119 (2010)......................................................................................3

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 26......................................................................................................................18, 21

Fed. R. Civ. P. 45......................................................................................................................16, 20

## FEDERAL REGULATIONS

45 C.F.R. § 147.130(a)(1)(iv)(A)...............................................................................................4, 12

75 Fed. Reg. 41,726 (July 19, 2010)................................................................................................3

76 Fed. Reg. 46,621 (Aug. 3, 2011).................................................................................................4

77 Fed. Reg. 16,501 (Mar. 21, 2012)...............................................................................................5

77 Fed. Reg. 8725 (Feb. 15, 2012) ..................................................................................................4

78 Fed. Reg. 8456 (Feb. 6, 2013) ....................................................................................................5

## MISCELLANEOUS

Health Resources and Services Administration, Women's Preventative Services:
    Required Health Plan Coverage Guidelines ..............................................................................4

HHS, Guidance on the Temporary Enforcement Safe Harbor (Aug 15, 2012)...............................4

## **INTRODUCTION**

The Executive Office of the President ("EOP") respectfully moves this Court to quash a subpoena *duces tecum* issued to the EOP by the Plaintiffs in connection with a civil action pending in the Eastern District of New York.[1]   In the underlying case, Plaintiffs have challenged the contraceptive coverage requirement contained in regulations promulgated by the Department of Health and Human Services ("HHS"), Department of the Treasury, and Department of Labor.   The subpoena at issue here demands thirteen broad categories of documents and an exceptionally burdensome search of all EOP files, including those of the President and Vice President themselves.   The EOP is not a party to the underlying case—nor could it be—and, as the Supreme Court has recognized, routine civil discovery seeking information from the Offices of the President, the Vice President, and their staffs is generally not allowed.   Such discovery is particularly unwarranted here.

The subpoena should be quashed for multiple reasons.   As an initial matter, the district court in the underlying case lacks subject matter jurisdiction, as twenty-one courts, including the D.C. Circuit and three judges in this district, have held in virtually indistinguishable cases.   *See, e.g., Wheaton Coll. v. Sebelius*, 703 F.3d 551 (D.C. Cir. 2012).   Although the court in the underlying action found jurisdiction based on a "substantial possibility" that the challenged regulations would be enforced against Plaintiffs, the court improperly disregarded Defendants' myriad statements in this case and others, as well as in the Federal Register, that the current regulations will never be enforced by Defendants against entities like Plaintiffs, the existence of a safe harbor

---

[1] Plaintiffs in the underlying action are the Roman Catholic Archdiocese of New York, Catholic Health Services of Long Island, and Catholic Health Care System.

shielding Plaintiffs from enforcement by Defendants, and Defendants' issuance of a Notice of Proposed Rulemaking proposing significant changes to the regulations that will be finalized by August 1, 2013. Against this backdrop, it cannot be said that there is a "substantial possibility" of enforcement of the current regulations by Defendants against Plaintiffs, much less that any future injury is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147-48 (2013). This Court is, of course, bound by this most recent Supreme Court precedent, as well as controlling precedent in the D.C. Circuit concluding that a challenge to the same regulations is unripe, both of which squarely reject the analysis articulated by the New York district court. Because no subpoena may properly issue from this Court when the court in the underlying action lacks subject matter jurisdiction, Plaintiffs' subpoena is invalid and must be quashed.

Furthermore, even were Plaintiffs able to overcome this jurisdictional defect, their subpoena is directed at the EOP, and seeks documents from the Offices of the President, the Vice President, and an array of senior advisors, as well as numerous other individuals and entities within the EOP, including documents concerning communications by the President. The Supreme Court has firmly established that such civil discovery requests directed to the Office of the Chief Executive are generally inappropriate, *see Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), and the subpoena issued here falls squarely within that prohibition. Indeed, Plaintiffs' subpoena does not satisfy the ordinary standards set forth in Federal Rule of Civil Procedure 45, let alone the heightened, "exacting standards" Plaintiffs must meet to justify each of their discovery demands to the EOP. *Id.* at 386. Plaintiffs have not shown—and cannot show—that the documents demanded from non-party EOP are even relevant, let alone necessary to

2

enable them to litigate their claims in the underlying challenge to the validity of agency regulations. Moreover, responding to the subpoena, which is exceedingly broad in scope, would impose an onerous and undue burden on the EOP, and distract senior Executive advisors from their important functions in the operation of the federal government. Finally, the subpoena on its face calls for information that falls within well-recognized privileges, including the presidential communications privilege and the deliberative process privilege. Accordingly, even if this Court were to conclude, contrary to the standards articulated by the Supreme Court, D.C. Circuit precedent, and the decisions of three judges in this district, that subject matter jurisdiction exists in the underlying action, the subpoena must nevertheless be quashed.

## BACKGROUND

## I.     STATUTORY AND REGULATORY FRAMEWORK

Section 1001 of the Patient Protection and Affordable Care Act[2] requires all group health plans and health insurance issuers that offer non-grandfathered group or individual health coverage to provide coverage for certain preventive services without cost-sharing. 42 U.S.C. § 300gg-13. To implement this provision, the Defendant agencies issued interim final regulations that require these group health plans and health insurance issuers to cover, *inter alia*, all Food and Drug Administration ("FDA")-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity, as prescribed by a health care provider. 75 Fed. Reg. 41,726 (July 19, 2010). An amendment to the interim final regulations authorized an exemption for certain religious employers (and their health

---

[2] Pub. L. No. 111-148, 124 Stat. 119 (2010).

plans) from the contraceptive coverage requirement. *See* Health Resource and Services Administration, Women's Preventive Services: Required Health Plan Coverage Guidelines, *available at* http://www.hrsa.gov/womensguidelines (last visited April 3, 2013); 76 Fed. Reg. 46,621 (Aug. 3, 2011); 45 C.F.R. § 147.130(a)(1)(iv)(A).

After carefully considering the thousands of comments they received in response to the amendment to the interim final regulations, Defendants promulgated final regulations that reaffirmed the religious employer exemption policy and simultaneously established a temporary enforcement safe harbor for certain additional employers (and their health plans) that will be in effect until the first plan year that begins on or after August 1, 2013.  77 Fed. Reg. 8725, 8727 (Feb. 15, 2012); HHS, Guidance on the Temporary Enforcement Safe Harbor (Aug. 15, 2012), *available at* http://cciio.cms.gov/resources/files/prev-services-guidance-08152012.pdf  (last visited April 3, 2013).  Pursuant to the safe harbor, Defendants will not take any enforcement action against an employer (or its group health plan or group health insurance issuer) that fails to cover some or all recommended contraceptive services if the employer is a non-profit organization with religious objections to contraceptive coverage and meets certain other criteria.  Plaintiffs do not dispute that they are protected by the enforcement safe harbor.

Defendants have made clear that, during the safe harbor period, they will amend the regulations to establish alternative means of providing contraceptive coverage without cost-sharing to the employees of non-profit religious organizations with religious objections to contraceptive coverage, like Plaintiffs, while also accommodating those organizations' religious objections.  77 Fed. Reg. at 8728.  Defendants began the process

4

of amending the regulations on March 21, 2012, when they published an Advance Notice

of Proposed Rulemaking ("ANPRM") in the Federal Register.  77 Fed. Reg. 16,501 (Mar.

21, 2012).  On February 1, 2013, after considering the approximately 200,000 comments

submitted in response to the ANPRM, Defendants released a Notice of Proposed

Rulemaking ("NPRM") that would amend the contraceptive coverage requirement as it

applies to Plaintiffs and similarly-situated entities.  Specifically, the NPRM would,

among other things, (1) "amend the criteria for the religious employer exemption to

ensure that an otherwise exempt employer plan is not disqualified because the employer's

purposes extend beyond the inculcation of religious values or because the employer

serves or hires people of different religious faiths"; and (2) "establish accommodations

for health coverage established or maintained by eligible organizations, or arranged by

eligible organizations that are religious institutions of higher education, with religious

objections to contraceptive coverage."  78 Fed. Reg. 8456, 8459 (Feb. 6, 2013).  The

NPRM requests comment on the proposed amendments to the regulations and, notably,

does not propose an option of continuing the regulations as applied to Plaintiffs and

similarly-situated entities.  *Id.* at 8463-64.  Defendants remain absolutely committed to

finalizing changes to the regulations before the expiration of the enforcement safe harbor

in August 2013, and, as the NPRM demonstrates, they are well on their way to doing so.

## II.     UNDERLYING PROCEEDINGS IN THE EASTERN DISTRICT OF NEW YORK

Plaintiffs filed their Complaint in the Eastern District of New York on May 21,

2012.  *See* Compl., ECF No. 1.[3]  Plaintiffs describe themselves as "Catholic religious

---

[3] All references to the electronic docket are to the underlying case, *Roman Catholic Archdiocese of N.Y. v. Sebelius*, No. 1:12-cv-02542-BMC (E.D.N.Y.).

entities," *id.* ¶ 2, and allege that they cannot provide health insurance covering what they describe as "abortion, sterilization, and contraceptives" without violating their religious beliefs, *id.* ¶¶ 4-5. Plaintiffs claim that the regulations violate the First Amendment to the United States Constitution, the Religious Freedom Restoration Act, and the Administrative Procedure Act. Notably, Plaintiffs' challenge is limited to the current regulations, from which Plaintiffs are protected by the temporary enforcement safe harbor and which will never be enforced by Defendants against Plaintiffs in light of the forthcoming amendments proposed in the NPRM.

The government moved to dismiss the Complaint for lack of subject matter jurisdiction, contending that Plaintiffs lacked standing and that the case was not ripe for review. *See* ECF No. 16-1; ECF No. 30. The crux of Defendants' argument was that Plaintiffs had failed to allege any concrete and imminent injury from the challenged regulations in light of the enforcement safe harbor and Defendants' unequivocal, public commitment to amend the regulations before the expiration of the safe harbor to accommodate the religious concerns expressed by Plaintiffs and similarly-situated entities. *See, e.g.*, ECF No. 16-1 at 11-17. For similar reasons, Defendants argued the case was not ripe for judicial review because the challenged regulations were in the process of being amended to address the very issues raised by Plaintiffs. Every other court that had, as of that time, considered and decided the issue of jurisdiction in a similar suit (including two in this district) had found jurisdiction lacking.

On December 4, 2012, the court nonetheless denied Defendants' Motion to Dismiss. *See Roman Catholic Archdiocese of N.Y. v. Sebelius*, __ F. Supp. 2d __, 2012 WL 6042864 (E.D.N.Y. Dec. 4, 2012). Despite Defendants' unwavering commitment in

6

the various courts (including in the New York court) and in the Federal Register never to enforce the current regulations against Plaintiffs and similarly-situated entities, the court concluded that there was nonetheless a "substantial possibility" that the current regulations would be enforced against Plaintiffs, and that Plaintiffs had therefore alleged sufficient future injury from the current, soon-to-be-amended regulations. *Id.* at *15. The court also determined that Plaintiffs' alleged budgeting and administrative costs in preparing for such enforcement were sufficient "present harms stemming from the future operation of the Coverage Mandate." *Id.* at *17. The court also found the case ripe for review, reasoning that "it is still possible" that the current regulations will be enforced against Plaintiffs, *id.* at *21.

Defendants moved for reconsideration or, alternatively, permission to file an interlocutory appeal under 28 U.S.C. § 1292(b). *See* ECF No. 41; ECF No. 45. That Motion has been fully briefed for over seven weeks.[4]

### III.   PLAINTIFFS' SUBPOENA

Plaintiffs issued their subpoena from this Court on February 28, 2013, directed to the "Executive Office of the President; c/o the White House Chief of Staff." *See* attached Ex. A ("Subpoena"). The subpoena is exceedingly broad both in terms of the information it seeks and in the extensive number of individuals, offices, and entities from which it seeks that information.   It requests "all documents" falling within thirteen separate

---

[4] Since the court's denial of the Motion to Dismiss, numerous other courts, including the D.C. Circuit in *Wheaton College v. Sebelius*, 703 F.3d 551 (D.C. Cir. 2012), have concluded there is no jurisdiction in comparable cases, and the promised NPRM has been issued ahead of the anticipated deadline. Defendants further notified the court of the Supreme Court's recent decision in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), which confirms that, to establish standing, a plaintiff's claimed future injury must be "certainly impending." *Id.* at 1147-48.

subject categories of documents, with many subparts, from the broadest possible scope of individuals and offices within the EOP—*i.e.*, any and all of them, including the Offices of the President and Vice President—as well as "any employees, agents, agencies, subagencies, principals, representatives, or other Persons acting under the control or on behalf of any of the Persons identified herein." *Id.* at 2. It even seeks documents that are not in the actual possession of this extensive array of unnamed individuals and entities, but which the latter are "legally entitled or otherwise able to obtain . . . from another person." *Id.* at 4.

The requests are not even confined to documents related to the contraceptive coverage requirement challenged by Plaintiffs, but instead seek White House deliberations over the Affordable Care Act in general, such as information regarding (1) *any* "exemptions or waivers from the requirements of the Affordable Care Act," *id.* at 8, Request No. 5; (2) *any* "Persons and offices within EOP" that "discuss[ed], consider[ed], or analy[zed] . . . the Affordable Care Act," *id.* at 9, Request No. 11; and (3) the "business calendars" and "scheduling records" of the highest-level White House officials, including the President, the Vice President, and their most senior advisors, "as such relate to the Affordable Care Act," *id.* at 9, Request No. 10. On March 14, 2013, the EOP informed Plaintiffs via letter of their objections to the subpoena. Letter from Benjamin L. Berwick to Toni-Ann Citera (Mar. 14, 2013), attached as Ex. B.

## ARGUMENT

## I.   THE SUBPOENA IS INVALID BECAUSE THE NEW YORK DISTRICT COURT LACKS JURISDICTION OVER THE UNDERLYING CASE.

The Supreme Court has long recognized that "[t]he judicial subpoena power . . . is subject to those limitations inherent in the body that issues them because of the

8

provisions of the Judiciary Article of the Constitution." *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950). Consistent with these limitations, the Court has held "that if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("*Catholic Conference*").

As the D.C. Circuit has explained, *Catholic Conference* holds that "a district court lacks jurisdiction to issue a subpoena when a federal court has erroneously asserted jurisdiction over the underlying action." *Houston Business Journal, Inc. v. Office of the Comptroller of Currency*, 86 F.3d 1208, 1213 (D.C. Cir. 1996); *see also In re Verizon Internet Servs.*, 257 F. Supp. 2d 244, 254 (D.D.C. 2003) (stating that "the absence of a sound federal case or controversy . . . was . . . fatal to the validity of the subpoenas" in *Catholic Conference* and *Houston Business Journal*), *rev'd on other grounds sub nom. Recording Indus. Ass'n of Am. v. Verizon Internet Servs.*, 351 F.3d 1229 (D.C. Cir. 2003). Here, the New York district court has "erroneously asserted jurisdiction" over Plaintiffs' challenge to the current, but soon-to-be-changed, contraceptive coverage regulations, and the subpoena issued to the EOP is therefore invalid.

The New York court lacks jurisdiction both because Plaintiffs lack standing and because their claims are not ripe. Plaintiffs' claims are expressly limited to the regulations in their current—but moribund—form; they do not challenge the forthcoming, not-yet-finalized regulations, nor could they. With respect to the challenged regulations, Plaintiffs are protected by a temporary enforcement safe harbor, which

9

extends until at least January 1, 2014.[5]  By that time, the current regulations will have changed with respect to Plaintiffs, as evidenced by Defendants' consistent and unequivocal public statements, including in the ANPRM and NPRM, in oral argument before the D.C. Circuit, and in numerous filings in the New York court and every other court considering the issue.

In denying Defendants' Motion to Dismiss for lack of jurisdiction, the New York district court erroneously rejected Defendants' representations and arguments, and thereby became the first of only two courts to assert jurisdiction over a challenge like this one.  The court's primary error was to conclude that, notwithstanding Defendants' unequivocal promises and actions to the contrary, and the presumption of good faith to which the government is entitled, there exists a "substantial possibility" that the current version of the regulations will be enforced against Plaintiffs. *Archdiocese of N.Y.*, 2012 WL 6042864, at *15.   That finding implicitly—and erroneously—discredits the government's promises. *See, e.g.*, *Colo. Christian Univ. v. Sebelius*, 2013 WL 93188, at *5 (D. Colo. Jan. 7, 2013) (recognizing the "good-faith presumption" to which defendants' representations are entitled); *Univ. of Notre Dame v. Sebelius*, 2012 WL 6756332, at *3 (N.D. Ind. Dec. 31, 2012) ("The government is entitled to a presumption of good faith in such promises."); *Most Reverend David A. Zubik v. Sebelius*, 2012 WL 5932977, at *9 (W.D. Pa. Nov. 27, 2012).   But, even if a "substantial possibility" of enforcement against Plaintiffs by Defendants were to exist (and it does not), the court would still lack jurisdiction under controlling Supreme Court precedent.

---

[5] The safe harbor is in effect until the first plan year that begins on or after August 1, 2013, and Plaintiffs' plan years begin on January 1, 2014.

Notwithstanding the New York district court's assertion of jurisdiction, this Court must independently assure itself that jurisdiction has not been "erroneously asserted" in the underlying case. *See Houston Business Journal*, 86 F.3d at 1213. The fact that the D.C. Circuit and twenty district courts, including three in this district, have agreed with Defendants' jurisdictional arguments in cases materially indistinguishable from the underlying action is a powerful indication that the New York court's assertion of jurisdiction was in error.[6]  In fact, this Court need look no further than the D.C. Circuit's

---

[6] *See Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25 (D.D.C. 2012), *affirmed in part and held in abeyance by Wheaton Coll. v. Sebelius*, 703 F.3d 551 (D.C. Cir. 2012); *Wheaton Coll. v. Sebelius*, 887 F. Supp. 2d 102 (D.D.C. 2012), *affirmed in part and held in abeyance by* 703 F.3d 551; *Roman Catholic Archbishop of Washington v. Sebelius*, --- F. Supp. 2d ---, 2013 WL 285599 (D.D.C. Jan. 25, 2013); *see also Ave Maria Univ. v. Sebelius*, No. 2:12-cv-0088-UA-SPC (M.D. Fla. Mar. 29, 2013); *Eternal Word Television Network Inc. v. Sebelius*, No. 2:12-cv-00501-SLB, 2013 WL 1278956 (N.D. Ala. Mar. 25, 2013); *Franciscan Univ. of Steubenville v. Sebelius*, No. 2:12-cv-00440-ALM-MRA, 2013 WL 1189854 (S.D. Ohio Mar. 22, 2013); *Geneva Coll. v. Sebelius*, No. 2:12-cv-207, 2013 WL 838238 (W.D. Pa. Mar. 6, 2013); *Most Reverend Wenski v. Sebelius*, No. 12-cv-23820 (S.D. Fla. Mar. 5, 2013); *Roman Catholic Diocese of Dallas v. Sebelius*, Civil Action No. 3:12-cv-01589-B, 2013 WL 687080 (N.D. Tex. Feb. 26, 2013); *Conlon v. Sebelius*, No. 1:12-cv-3932, 2013 WL 500835 (N.D. Ill. Feb. 8, 2013); *Archdiocese of St. Louis v. Sebelius*, No. 4:12-cv-924-JAR, 2013 WL 328926 (E.D. Mo. Jan. 29, 2013); *Most Reverend Lawrence T. Persico v. Sebelius*, No. 1:12-cv-00123-SJM, 2013 WL 228200 (W.D. Pa. Jan. 22, 2013); *Colo. Christian Univ. v. Sebelius*, No. 11-cv-03350-CMA-BNB, 2013 WL 93188 (D. Colo. Jan. 7, 2013); *Catholic Diocese of Peoria v. Sebelius*, No. 1:12-cv-01276, 2013 WL 74240 (C.D. Ill. Jan. 4, 2013); *Univ. of Notre Dame v. Sebelius*, No. 3:12-cv-00523, 2012 WL 6756332 (N.D. Ind. Dec. 31, 2012); *Catholic Diocese of Biloxi v. Sebelius*, No. 1:12-cv-00158, 2012 WL 6831407 (S.D. Miss. Dec. 20, 2012), *mot. to alter or amend j. denied*, 2013 WL 690990 (S.D. Miss. Feb. 15, 2013); *Most Reverend David A. Zubik v. Sebelius*, No. 2:12-cv-00676, 2012 WL 5932977 (W.D. Pa. Nov. 27, 2012), *appeal noticed* (3d Cir. Jan. 23, 2013); *Catholic Diocese of Nashville v. Sebelius*, No. 3-12-0934, 2012 WL 5879796 (M.D. Tenn. Nov. 21, 2012); *Legatus v. Sebelius*, No. 12-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012), *appeal docketed*, Nos. 13-1093, 13-1092 (6th Cir. Jan. 24, 2013); *Nebraska v. U.S. Dep't of Health & Human Servs.*, 877 F. Supp. 2d 777 (D. Neb. 2012), *appeal docketed*, No. 12-3238 (8th Cir. Sept. 25, 2012); *Wheaton Coll.*, 703 F.3d 551 (affirming in part and holding in abeyance appeals in *Wheaton College* and *Belmont Abbey College*). *But see Roman Catholic Diocese of Fort Worth v. Sebelius*, No.

11

ruling in *Wheaton College v. Sebelius*, which is binding precedent in this case despite the contradictory opinion by the district court in the underlying action.  *See In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (R.B. Ginsburg, J.) ("The federal courts spread across the country owe respect to each other's efforts and should strive to avoid conflicts, but each has an obligation to engage independently in reasoned analysis. Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit.");  *see also Archbishop of Washington*, 2013 WL 285599, at *3 (applying *Wheaton College* and dismissing a materially indistinguishable case on jurisdictional grounds).

During oral argument before the D.C. Circuit, Defendants represented in open court in no uncertain terms that they would *never* enforce the current regulations against entities like the *Wheaton College* plaintiffs and the Plaintiffs here.  *See* 703 F.3d at 552 (crediting the government's representation "that it would never enforce 45 C.F.R. § 147.130(a)(1)(iv) in its current form against the appellants or those similarly situated as regards contraceptive services").  The government has made this commitment repeatedly, and continues to make it, in the underlying case and all other similar cases.  The D.C. Circuit took "the government at its word" and considered these statements to be a "binding commitment," and, as a result, the court concluded that a challenge to the regulations in their current form by organizations like Plaintiffs here is not ripe.  *Id.*; *see also Am. Petroleum Inst. v. EPA*, 683 F.3d 382 (D.C. Cir. 2012) (holding that challenge to regulations was not ripe for review where agency issued NPRM that proposed amending the challenged regulations); *Archbishop of Washington*, 2013 WL 285599, at

---

4:12-cv-00314-Y-TRM (N.D. Tex. Jan. 31, 2013), relying on the deeply flawed jurisdictional analysis of the New York court.

*3.[7] The D.C. Circuit's conclusion in *Wheaton College* controls this Court's analysis of the jurisdictional issue regarding enforcement of Plaintiffs' subpoena.[8]

Finally, if any question remained as to the lack of jurisdiction in the underlying case (and none does), the Supreme Court's recent decision in *Clapper v. Amnesty Int'l USA* has laid it to rest. *Clapper* was decided after the New York court denied Defendants' Motion to Dismiss but nonetheless controls the jurisdictional analysis here. The plaintiffs in *Clapper*—"attorneys and human rights, labor, legal, and media organizations"—challenged Section 702 of the Foreign Intelligence Surveillance Act on the grounds that they frequently communicate with individuals who are likely targets of surveillance. 133 S. Ct. at 1145. The *Clapper* plaintiffs—like Plaintiffs in the underlying case—advanced two theories of standing: first, that there was a "reasonable likelihood"

---

[7] While the D.C. Circuit held that the plaintiffs in *Wheaton College* had standing to assert their claims, that aspect of the court's analysis is inapplicable to this case. Because standing is "assessed at the time of filing," *Wheaton Coll.*, 703 F.3d at 552, and because the plaintiffs in *Wheaton College* filed suit before Defendants established or clarified the enforcement safe harbor, the D.C. Circuit held those plaintiffs had standing at the time their suits were filed. *Id.* In the underlying case, by contrast, Plaintiffs filed their suit *after* Defendants established the enforcement safe harbor, for which it was obvious that Plaintiffs qualified before Plaintiffs filed suit in New York. By that time, Defendants had also publicly committed to changing the regulations. Assessing standing at the time of filing, per the D.C. Circuit's instruction, thus leads to the conclusion that Plaintiffs lacked injury-in-fact for purposes of standing at the time they filed suit, and that they continue to lack such injury now. *See, e.g.*, *Zubik*, 2012 WL 5932977, at *11; *Catholic Diocese of Nashville*, 2012 WL 5879796, at *3-4; *Legatus*, 2012 WL 5359630, at *5; *Notre Dame*, 2012 WL 6756332, at *4.

[8] As further evidence of Defendants' intent to fulfill their commitment to change the rules, after considering 200,000 comments on the ANPRM, Defendants have issued very detailed proposed new regulations with significant differences from the ones Plaintiffs challenge, including simplification of the religious employer exemption. Further, there is every indication that the government is following through on its promises; it has moved with alacrity to change the regulations and is entitled to a presumption of good faith. *See, e.g.*, *Zubik*, 2012 WL 5932977, at *8-9; *Colo. Christian Univ.*, 2013 WL 93188, at *5; *Wheaton Coll.*, 887 F. Supp. 2d at 113 & n.10; *Notre Dame*, 2012 WL 6756332, at *3-4; *Catholic Diocese of Peoria*, 2013 WL 74240, at *5.

that their communications would be the subject of surveillance, creating future injury;

and, second, that they had suffered *present* injury in order to avoid that likely future

harm. *Id.* at 1146. With respect to the latter, the plaintiffs alleged that they had "take[n]

costly and burdensome measures to protect the confidentiality of their communications,"

such as travelling abroad to have in-person conversations and ceasing to engage in certain

telephone and e-mail conversations. *Id.* at 1151.

The Supreme Court rejected both theories. First, the Court emphasized that, for a

possible future injury to convey standing, the injury must be "*certainly* impending." *Id.*

at 1147-48. In so holding, the Court expressly rejected the "objectively reasonable

likelihood" standard applied by the Second Circuit, *id.*, and, *a fortiori*, rejected the

"substantial possibility" standard articulated by the New York district court in the

underlying action.[9] The Court concluded that, because the future event that the plaintiffs

feared was speculative, the threatened injury was not certainly impending. *Id.* at 1148-

50. The same is true—only more so—regarding the contraceptive coverage regulations

Plaintiffs challenge.

Second, the Court rejected the plaintiffs' argument that they had standing as a

result of *present* injury or harm incurred in preparation for the speculative future

surveillance. *Id.* at 1150-53. Notably, the New York court's ruling in the underlying

case rested largely on a similar theory advanced by Plaintiffs. Specifically, the New

---

[9] The New York court also said that "plaintiffs' claimed future injuries" were "certainly impending," 2012 WL 6042864, at \*15, but that statement ignores the undisputed (and indisputable) fact that the challenged regulations will never be enforced against Plaintiffs by Defendants and will be revised prior to August 1, 2013. There is simply no possibility—"substantial" or otherwise—that Defendants will enforce the current regulations as to Plaintiffs and, *a fortiori*, future injury from their enforcement by Defendants cannot be "certainly impending," as *Clapper* demands.

York court held that Plaintiffs are suffering *present* harm stemming from the need to plan and budget for the *possibility* that the current regulations will be enforced against them by Defendants in the future. *Roman Catholic Archdiocese of N.Y.*, 2012 WL 6042864, at *17-18. *Clapper* makes abundantly clear that such allegations are not a sufficient basis for jurisdiction:

> Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing— because the harm respondents seek to avoid is not certainly impending. In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending. . . . Any ongoing injuries that respondents are suffering are not fairly traceable to § 1881a.

> If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear. . . . Thus, allowing respondents to bring this action based on costs they incurred in response to a speculative threat would be tantamount to accepting a repackaged version of respondents' first failed theory of standing.

133 S. Ct. at 1151 (internal citations omitted). The same is true here.

Of course, Plaintiffs will be free to challenge the forthcoming *amended* regulations once they are finalized if, in their view, they do not adequately address Plaintiffs' concerns. But nothing the New York court does now—even if it were to permanently enjoin the application of the current regulations to Plaintiffs—can alleviate any such concerns about the future amended regulations. *See, e.g.*, *Colo. Christian Univ.*, 2013 WL 93188, at *6-*7; *Zubik*, 2012 WL 5932977, at *9; *Notre Dame*, 2012 WL 6756332, at *4. Thus, any opinion issued by the New York district court would be purely advisory. For these reasons, the court in the underlying action lacks subject matter jurisdiction, and thus this Court lacks jurisdiction to enforce the subpoena.

15

**II.    PLAINTIFFS' SUBPOENA MUST BE QUASHED BECAUSE IT FAILS TO MEET THE STANDARDS OF RULE 45, LET ALONE THE MORE STRINGENT STANDARDS APPLICABLE TO THE EXECUTIVE OFFICE OF THE PRESIDENT.**

Even if this Court were to reject the jurisdictional principles articulated above, the subpoena must nonetheless be quashed because it does not meet the ordinary standards for a proper Rule 45 subpoena, let alone the more "exacting standards" that apply when discovery is sought from the Executive Office of the President. *Cheney,* 542 U.S. at 386.

**A.    Applicable standards.**

In typical civil litigation, Rule 45 prohibits courts from giving effect to subpoenas that "subject[] a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). When considering a motion to quash under Rule 45, district courts consider "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005); *id.* ("limiting discovery is appropriate when the burden of providing the documents outweighs the need for it").

The circumstances here, however, are far from typical because the subpoena in question seeks information from the EOP, including documents involving communications by the President, the Vice President, and their most senior advisors. Special considerations over and above the normal Rule 45 standards therefore apply. The Supreme Court has made clear that, when seeking information from the EOP, Plaintiffs bear the burden of meeting "exacting standards of '(1) relevancy; (2) admissibility; [and] (3) specificity." *Cheney,* 542 U.S. at 386. These "exacting standards" are drawn from the Court's ruling on the criminal subpoenas at issue in *United States v. Nixon*, 418 U.S.

16

683, 700 (1974), and apply with even greater force when, as here, a party is seeking civil discovery from the White House. *See Cheney* 542 U.S. at 384 ("The need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in *Nixon*."). Respect for these heightened standards is particularly warranted here because, unlike in *Nixon* and *Cheney*, the EOP is not a party to the underlying civil case. *See Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating [this] balance of competing needs" under Rule 45) (quotation marks omitted).

B.  **The subpoena does not meet Rule 45's ordinary standards for discovery in civil litigation, let alone the more "exacting standards" applicable to a subpoena issued to the Executive Office of the President.**

Plaintiffs' subpoena must be quashed under Rule 45 because (1) there is no need for discovery of the EOP in order to litigate Plaintiffs' underlying challenges to regulations issued pursuant to agency rulemaking, nor are the requested documents relevant to those claims; (2) the requests are overbroad and compliance would thus impose an undue burden on the EOP; and (3) the subpoena on its face requests documents that are subject to a claim of privilege. Plaintiffs cannot satisfy the ordinary requirements of Rule 45, let alone carry their burden of making the heightened showing required under *Cheney* and *Nixon*.

The government is aware of no case in which discovery from the EOP—much less production of records of communications by the President or the Vice President—has been allowed in a case challenging a federal regulation. This case should not be the first. Because one or more officials within the EOP are likely to have some involvement in the

17

promulgation of any significant or high-profile regulation, and because such regulations are frequently challenged, requiring the EOP to respond to a subpoena like the one at issue here would significantly undermine the operation of the federal government.

*1.      Plaintiffs have not shown and cannot show that the documents sought by their subpoena are necessary for, or relevant to, their claims in the underlying action.*

Plaintiffs' subpoena is improper because none of the requested information is necessary for, or relevant to, their claims in the underlying litigation. In the New York district court, Plaintiffs have challenged regulations promulgated by the Defendant agencies, and it is well established that judicial review (even if subject matter jurisdiction existed) should be limited to the administrative record. *See e.g., Camp v. Pitts*, 411 U.S. 138, 142 (1973). Furthermore, as Defendants have made clear in the underlying proceedings, the administrative record that they have already produced to Plaintiffs contains all non-privileged materials that the agencies considered in promulgating the contraceptive coverage requirement, and thus any discovery outside of that record— particularly of a non-party such as the EOP—is neither necessary for nor relevant to judicial review of Plaintiffs' claims. Additionally, the parties are already engaged in extensive discovery. For example, in the next two weeks Defendants will be providing responses to Interrogatories and Requests for Admission, and will be producing a witness for the Rule 30(b)(6) deposition of HHS. Thus, Plaintiffs already have or will obtain more than sufficient relevant evidence from Defendants to adequately present their claims to the district court.[10]  They have no need for additional information from the

---

[10] In addition, the Federal Rules prohibit a party from seeking discovery that is "unreasonably cumulative or duplicative" or where that party "has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

They have no need for additional information from the

EOP. Moreover, any requested documents concerning the NPRM or other aspects of the ongoing rulemaking, Subpoena at 3, 7—which Plaintiffs are not challenging in the underlying case and cannot challenge in its current, non-final form—are not remotely relevant, or necessary, to Plaintiffs' suit.

The Supreme Court in *Cheney* recognized that even in cases where, unlike this one, a party can show a need for White House information in civil litigation, that need must nonetheless yield to the "public interest" in (1) "afford[ing] Presidential confidentiality the greatest protection consistent with the fair administration of justice"; and (2) "protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Cheney*, 542 U.S. at 382. That interest could scarcely be greater than in this case, where resolution of Plaintiffs' claims—*i.e.*, the "fair administration of justice"—does not require any of the documents sought by Plaintiffs from the EOP and where, as discussed below, responding to the subpoena would impose an undue burden on the EOP.   In short, this is not a case "where a court's ability to fulfill its constitutional responsibility to resolve cases and controversies within its jurisdiction hinges on the availability of certain indispensable information." *Id.* at 385.

Plaintiffs' subpoena to the EOP is thus not a request for documents relevant, let alone necessary, to judicial review of their underlying claims, but should be seen instead for what it is: an impermissible attempt to conduct an extensive fishing expedition through the files of high-ranking White House officials, which would cause "unnecessary intrusion into the operation of the Office of the President," in clear violation of *Cheney*.

---

Both of these provisions additionally preclude Plaintiffs from the discovery of the EOP sought by their subpoena.

19

542 U.S. at 387. Having satisfied neither the ordinary standard for enforcing a subpoena under Rule 45, nor the heightened and particularized standard applicable to discovery requests issued to the EOP, Plaintiffs' subpoena must be quashed.

2.    *Compliance with Plaintiffs' overbroad subpoena would impose an undue burden on the Executive Office of the President.*

Apart from the fact that Plaintiffs cannot meet their heightened burden of showing need for, or relevance of, the requested information, the subpoena must be quashed because compliance would impose an undue burden on the EOP, in violation of Rule 45. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv). As *Cheney* recognized, "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." 542 U.S. at 385. Accordingly, the burden to the EOP in responding to the subpoena is an "important factor" weighing against its enforcement. *Id.*

As set forth *supra*, Plaintiffs' subpoena is strikingly broad in scope. For thirteen separate topics, most of which contain subparts, the subpoena seeks, from *all* individuals and offices within the EOP, *all* documents concerning those topics. The subpoena also expressly seeks calendars and scheduling records of the highest officials in the Executive Branch, including the President, the Vice President, and their most senior advisors. Furthermore, the scope of the subpoena is not reasonably confined to the specific regulations challenged by Plaintiffs in the underlying case, but extends to the EOP's consideration and analysis of the Affordable Care Act generally.

Compliance with the subpoena would impose a substantial and undue burden on the EOP, especially given that none of the requested information is needed for Plaintiffs

to litigate their claims in the underlying action.[11] Indeed, the breadth of the information sought and the range of individuals and entities from whom it is sought are staggering when compared to the claims asserted in the underlying action. Responding to the subpoena would strain the EOP's ability to perform its Executive functions. The D.C. Circuit has recognized "the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Watts*, 482 F.3d at 417 (quotation omitted); *Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 320 (D.D.C. 1998) (considering "whether compliance threatens the normal operations of the responding agencies" in determining whether a subpoena is unduly burdensome). These concerns are accentuated when discovery is sought from the EOP and its officials, as "the Executive's 'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of litigation against it." *Cheney*, 542 U.S. at 385 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982)). Here, of course, the EOP, the President, and the Vice President—all of whose files Plaintiffs seek to search—are not parties to the underlying action.

Plaintiffs' overbroad subpoena subjects EOP to an undue burden, and it must therefore be quashed pursuant to Rule 45(c)(3)(A)(iv). Moreover, the "paramount necessity of protecting the Executive Branch from vexatious litigation that might distract

---

[11] Moreover, at least one of the document requests seeks information that is "obtainable from another source that is more convenient, less burdensome, and less expensive." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) (quoting Fed. R. Civ. P. 26(b)(2)). Request No. 13 seeks "documents, communications, and statements by, between, with, or among [the EOP], the President, and Cardinal Dolan," Subpoena at 10, but this information is obtainable from Cardinal Dolan himself, who is the Archbishop of Plaintiff Roman Catholic Archdiocese of New York, *see* Compl. ¶ 27.

it from the energetic performance of its constitutional duties," *Cheney*, 542 U.S. at 382, underscores the impropriety of enforcing the subpoena against the EOP.[12]

### 3.    On its face, the subpoena seeks information that is subject to a claim of privilege.

The subpoena is also improper under Rule 45(c)(3)(A)(iii) because it seeks information that is protected by various recognized privileges, including, for example, the presidential communications privilege, the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine. Indeed, many of the requests expressly seek privileged material. For instance, Request No. 2 seeks documents concerning the "formulation," "drafting," and "consideration" of the regulations, and Request No. 3 seeks documents concerning policies that were "proposed, discussed, or considered." Subpoena at 7. Plaintiffs' "Instructions" moreover define any document request to include a request for all "draft" and "interim" versions of any document, including "handwritten notations, modifications, changes, amendments, revisions, or otherwise." *Id.* at 5. On their face, these requests call for material that is privileged. *See generally In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) (discussing presidential communications and deliberative process privileges).

Due to the number and breadth of the requests contained in Plaintiffs' subpoena, the EOP does not here undertake an exhaustive assertion of applicable privileges. This approach is consistent with the proposition recognized by the Supreme Court in *Cheney* that the Executive Branch does not bear the burden "of invoking executive privilege with

---

[12] In addition, that Plaintiffs' subpoena unreasonably afforded the EOP a mere month, *i.e.*, until April 1, 2013, to comply with its numerous document requests is yet another basis for this Court to quash the subpoena. *See* Fed R. Civ. P. 45(c)(3)(A)(i) (stating that "the issuing court must quash or modify a subpoena that . . . fails to allow a reasonable time to comply"). As noted previously, Defendants informed Plaintiffs that the EOP does not intend to comply with the subpoena. *See* Ex. B.

sufficient specificity and of making particularized objections" in response to "discovery requests [that] are anything but appropriate." 542 U.S. at 388. Indeed, *Cheney* makes clear that the EOP does not "bear the onus of critiquing the unacceptable discovery requests line by line," and that, in fact, "just the opposite" is the case. *Id.*

## CONCLUSION

For the foregoing reasons, the Rule 45 subpoena issued to the Executive Office of the President is improper, and EOP's Motion to Quash must be granted.

Dated: April 4, 2013.                    Respectfully submitted

STUART F. DELERY
Acting Assistant Attorney General
IAN HEATH GERSHENGORN
Deputy Assistant Attorney General
RONALD C. MACHEN JR.
United States Attorney
JENNIFER RICKETTS
Director
SHEILA M. LIEBER
Deputy Director

M. ANDREW ZEE (CA Bar No. 272510)
BENJAMIN L. BERWICK (MA Bar No. 679207)
MICHELLE R. BENNETT (CO Bar No. 37050)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7314
Washington, D.C.  20530
Tel: (202) 305-8648
Fax: (202) 616-8470
Email: m.andrew.zee@usdoj.gov

*Attorneys for the Executive Office of the President*

# EXHIBIT A

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | |
|---|---|
| The Roman Catholic Archdiocese of New York, et al | ) |
| *Plaintiff* | ) |
| v. | ) |
| Kathleen Sebelius, et al | ) |
| *Defendant* | ) |

Civil Action No.    No. 1:12-cv-02542-BMC

(If the action is pending in another district, state where:

Eastern District of New York          )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Executive Office of the President; c/o The White House Chief of Staff; The White House, 1600 Pennsylvania Avenue NW, Washington, DC 20500

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Schedule A, attached hereto.

| Place: 51 Louisiana Avenue NW<br>Washington, DC 20001<br>Attn: Jennifer Bradley Lichter | Date and Time:<br><br>04/01/2013 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 2/28/13

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____

Plaintiffs, The Roman Catholic Archdiocese of New York, et al._____ , who issues or requests this subpoena, are:

Toni-Ann Citera; Jones Day, 222 E. 41st Street, New York, New York 10017; tcitera@jonesday.com; (212)326-8376

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), Plaintiffs The Roman Catholic Archdiocese of New York; Catholic Health Care System; and Catholic Health Services of Long Island ("Plaintiffs"), by and through their counsel, hereby request the following documents (collectively, the "Requests" and, individually, a "Request") from the Executive Office of the President ("EOP"). EOP is commanded to produce to Plaintiffs at the offices of Jones Day, 51 Louisiana Avenue Northwest, Washington, DC 20001, Attention: Jennifer Bradley Lichter, any and all documents described in this Schedule on or before April 1, 2013 at 10:00 a.m. or as otherwise agreed by counsel or ordered by the Court.

The following Definitions and Instructions apply to each and every Request:

### DEFINITIONS

1.  "Affordable Care Act" means the Patient Protection and Affordable Care Act codified at 124 Stat. 119 through 124 Stat. 1025.

2.  "Cardinal Dolan" means Cardinal Timothy Dolan, Archbishop of the Archdiocese of New York and President of the United States Conference of Catholic Bishops, including without limitation any of his agents or representatives.

3.  "Committee" means IOM's Committee on Preventive Services for Women and all members, employees, agents, principals, or representatives of the Committee on Preventive Services for Women.

4.  "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5.  "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.      "Defendants" shall include the U.S. Department of Health and Human Services;

the U.S. Department of Labor; the U.S. Department of the Treasury; each Secretary thereof in

their official capacity; and all agencies, employees, agents, principals, or representatives of each

of the Defendants.

7.      "Document" is defined to be synonymous in meaning and equal in scope to the

usage of the term "documents or electronically stored information" in Fed. R. Civ. P.

34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this

term.

8.      "Executive Office of the President" or "EOP" means the office overseen by the

White House Chief of Staff as defined at www.whitehouse.gov, including without limitation all

entities, offices, and personnel that exist within EOP; the White House Office and all entities,

offices, and personnel that exist, work, are employed, or are affiliated therein, including but not

limited to the Office of Management and Budget, the Domestic Policy Council, the White House

Office of Faith-Based and Neighborhood Partnerships, and the Council on Women and Girls; the

Office of the Vice President and all entities, offices, and personnel that exist therein; all White

House Staff, including the Chief of Staff, Deputy Chief(s) of Staff, Counselor(s) to the President,

and Senior Advisor(s) and Special Assistant(s) to the President; and any employees, agents,

agencies, subagencies, principals, representatives, or other Persons acting under the control or on

behalf of any of the Persons identified herein.  This definition shall apply without regard to the

particular individual who may occupy any particular post or hold any particular title at a

particular time.

9.      "Grandfathered Health Plan" means any group health plan or plan offered by a health insurance issuer that is a "grandfathered health plan coverage," as that term is defined in 29 C.F.R. § 2590.715-1251(d).

10.     "Interim Final Rules" means the rules regarding women's preventive care as promulgated in 75 Fed. Reg. 41,726.

11.     "IOM" means the Institute of Medicine and all members, employees, agents, principals, or representatives of the Institute of Medicine.

12.     "Mandate" means the requirement that group health plans and health insurance issuers offering group or individual health insurance coverage provide coverage for and not impose any cost sharing requirements for, "with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph" pursuant to 42 U.S.C. § 300gg-13(a)(4), together with the referenced comprehensive guidelines supported by the Health Resources and Services Administration, including but not limited to the requirement to provide coverage for Food and Drug Administration-approved contraceptives, sterilization, and counseling related to those services.  This definition includes without limitation any amendments, changes, or supplements to the Mandate as may be hereafter promulgated, including but not limited to a Notice of Proposed Rulemaking issued on or about February 1, 2013 and published in the Federal Register at 78 Fed. Reg. 8456.

13.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14.     "Religious Employer" means an employer that satisfies the definition of a religious employer under 45 C.F.R. § 147.130(a)(iv)(A)-(B).

-3-

15.     "Report" means the report issued by IOM and titled "Clinical Preventive Services for Women:  Closing the Gaps" (Washington, DC: The National Academies Press 2011), including all appendices thereto.

16.     "Retiree-Only Plans" means those plans as defined in 75 Fed. Reg. 34,539.

17.     "Safe Harbor" means the policy set out in the document titled "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers, Group Health Plans and Group Health Insurance Issuers with Respect to the Requirement to Cover Contraceptive Services Without Cost Sharing Under Section 2713 of the Public Health Service Act, Section 715(a)(1) of the Employee Retirement Income Security Act, and Section 9815(a)(1) of the Internal Revenue Code" (the "Guidance"), published by the Center for Consumer Information and Insurance Oversight and the Centers for Medicare & Medicaid Services.

18.     "You" and "Your" means EOP as defined in paragraph 8 herein.

### INSTRUCTIONS

19.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

20.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

21.     The use of the singular form of any word includes the plural and vice versa.

22.     You shall produce in response to these requests all documents in Your possession, custody, or control.  The term "possession, custody, or control" includes actual possession by You, actual possession by You jointly with another, or constructive possession by You in the sense that You are legally entitled or otherwise able to obtain actual possession from another person.

23.     A Request for a document shall be deemed to include a request for any and all transmittal sheets, cover notes or letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.  For example, emails shall be produced with all attachments. Each and every document shall be produced in its entirety notwithstanding that portions thereof may contain information not requested, and including both the front and back of documents with printed matter or handwriting on both sides.  All draft, interim, and final versions of any document shall be produced, and all versions or copies that are not identical to the original or any other copy of the document, whether due to handwritten notations, modifications, changes, amendments, revisions, or otherwise, shall be produced.

24.     Documents shall be produced as they are kept in the usual course of business or labeled by the Request to which they are responsive.  Documents shall be produced in a manner reflecting their original state, for example, with file folders or "post-its" in the exact order as found, without removal or rearrangement of anything contained therein.  Documents shall be produced together with a photocopy of the file, binder, box or other container in which the document was located, so as to disclose the title or label of such container.

25.     Any Request to which You object or otherwise do not respond in full shall include the specific grounds for the objection or other reason for not responding.  Any objection to a Request should clearly indicate to which part or portion of the Request the objection is directed and You should provide all documents that are responsive to those parts or portions of the Request to which no objection is made as if such part or portion were propounded as a separate Request.  If there is no document responsive to any particular Request, please state so in writing.

26.     If any document requested herein is withheld under a claim of privilege or other doctrine or immunity from disclosure, You shall furnish the following information in writing at the time of Your response, unless otherwise ordered by the Court:

      A.    The nature of the privilege (including executive or deliberative process) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked;

      B.    For documents:

         1.  the type of document, e.g., letter or memorandum;

         2.  the general subject matter of the document;

         3.  the date of the document; and

         4.  the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other; and

      C.    For oral communications:

         1.  the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication;

         2.  the date and place of communication; and

         3.  the general subject matter of the communication.

You shall produce each requested document where only a portion of the document is subject to a claim of privilege or other doctrine or immunity from disclosure by excising or

otherwise protecting the portion for which a privilege, doctrine, or immunity from disclosure is asserted and produce the remainder of the document.

27.     Each Request is deemed to be continuing in nature. Any additional document that is obtained, discovered, or brought to Your attention between the time of responding to these Requests and the final disposition of this action must be produced.

**REQUESTS**

**Document Request No. 1:**    All documents concerning (i) the Mandate, (ii) the Interim Final Rules, and (iii) the Report, including without limitation Section 5.5 of the Report, providing that women's preventive services be defined as the full range of Food and Drug Administration-approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity.

**Document Request No. 2:**    All documents concerning the Religious Employer exemption, including without limitation all documents concerning the formulation, negotiation, drafting, consideration and finalization of the definition of Religious Employer and any documents concerning any proposed alternatives to such definition.

**Document Request No. 3:**    All documents concerning any policies adopted, proposed, discussed, or considered to accommodate employers that do not qualify as Religious Employers but who have religious or moral objections to the Mandate and/or the provision of coverage for contraceptives, sterilization, and related education and counseling.

**Document Request No. 4:**    All documents concerning the Safe Harbor, including without limitation (i) how the Safe Harbor came into being; (ii) any proposed or adopted plans to modify, extend or broaden the Safe Harbor's applicability; and (iii) the August 15, 2012 Guidance on the Safe Harbor.

**Document Request No. 5:**    All documents concerning exemptions or waivers from the requirements of the Affordable Care Act, including but not limited to (i) waivers from the exemptions for Retiree-Only Plans and Grandfathered Health Plans; (ii) the impact on the availability of healthcare services to women; and (iii) the impact on employers and health insurance issuers.

**Document Request No. 6:**    All documents and communications by, between, with or among You and any Person concerning abortion, contraceptives, sterilization, and related education and counseling, as they relate to the impact of the Mandate on Catholic organizations, Catholic individuals, the Catholic faith, and Catholic Cardinals and/or Bishops.

**Document Request No. 7:**    All documents concerning (i) how IOM was selected to create the Report; (ii) how individuals were selected or rejected for the Committee; (iii) any other person or entity considered by You and/or Defendants in addition or as an alternative to IOM for creating the Report; and (iv) any review, consideration, or communications by You and/or Defendants concerning the Report or any draft thereof.

**Document Request No. 8:**    All documents and communications concerning the Mandate, the Interim Final Rules, or the definition of Religious Employers by, between, with or among You and Planned Parenthood, NARAL Pro-Choice America, National Organization for Women, American Civil Liberties Union, National Partnership for Women & Families, National Women's Law Center, and any other women's health or family planning advocacy groups or individuals, pro-choice advocacy organizations or individuals, and pro-life advocacy organizations or individuals.

**Document Request No. 9:**    All documents, communications and statements by, between, with or among You and any Person concerning (i) the Mandate, (ii) the Interim Final Rules, (iii) the

definition of Religious Employers, (iv) the Safe Harbor, (v) IOM; (vi) the Committee; and (vii) the Report, including Section 5.5 of the Report, stating that women's preventive services be defined as the full range of Food and Drug Administration-approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity.

**Document Request No. 10:**  All documents concerning or reflecting the business calendars, appointments, meetings, or other scheduling records from January 1, 2010 to the present of (i) the President; (ii) the Vice President; (iii) any White House Chief of State; (iv) any White House Deputy Chief of Staff; (v) any Counselor to the President; (vi) any Senior Advisor or Special Assistant to the President, including without limitation Valerie Jarrett, David Plouffe, and Dana Singiser, as such relate to the Affordable Care Act or the Mandate.

**Document Request No. 11:**  All documents from January 1, 2010 to the present identifying the Persons and offices within EOP that participated in the discussion, consideration or analysis of the Affordable Care Act or the Mandate, including without limitation meeting invites and attendance lists, meeting agendas, working group lists, and other similar documents identifying such participants.

**Document Request No. 12:**  All documents concerning the following statement of the Vice President, which was made during the debate of the candidates for Vice President on Thursday, October 11, 2012, including any documents concerning the truth or accuracy of such statement:

> With regard to the assault on the Catholic Church, let me make it absolutely clear, no religious institution, Catholic or otherwise, including Catholic social services, Georgetown Hospital, Mercy Hospital, or any other hospital, none has to either refer for contraception, none has to pay for contraception, none has to be a vehicle to get contraception in any insurance policy they provide.  That is a fact.

**Document Request No. 13:**  All documents, communications, and statements by, between, with, or among You, the President, and Cardinal Dolan including but not limited to documents, communications, and statements concerning any meetings, telephone calls, or other communications, of any kind whatsoever, related to or following the President's meetings, telephone calls, and communications with Cardinal Dolan  in, around, and during the period from November 1, 2011 to May 1, 2012.

# EXHIBIT B



**U.S. Department of Justice**

Civil Division

Federal Programs Branch

| | |
|---|---|
| **Mailing Address** | **Overnight Delivery Address** |
| P.O. Box 883 | 20 Massachusetts Ave., N.W. |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

Tel:  (202) 305-8573
Fax:  (202) 616-8470
Benjamin.L.Berwick@usdoj.gov

March 14, 2013

Via Electronic Mail

Toni-Ann Citera
Jones Day
222 East 41st St.
New York, NY 10017

RE: *Roman Catholic Archdiocese of New York v. Sebelius*, No. 12-cv-02542-BMC
(E.D.N.Y.) – Rule 45 Subpoena to the Executive Office of the President

Dear Ms. Citera:

We are in receipt of the subpoena issued by you on February 28, 2013 to the Executive Office of the President ("EOP"), which, as you are aware, is not a party to the above-referenced case. The subpoena requests the production of 13 broad categories of documents on or before April 1, 2013. In accordance with Rule 45 of the Federal Rules of Civil Procedure, EOP objects to the subpoena and will not be complying with it, for the reasons that follow.

As an initial matter, plaintiffs are not entitled to the information they seek because the Eastern District of New York does not have subject matter jurisdiction over the underlying litigation. Seventeen federal district court decisions – including three issued in the U.S. District Court for the District of Columbia (where the current subpoena was issued), *see Roman Catholic Archbishop of Washington v. Sebelius*, __ F. Supp. 2d __, 2013 WL 285599 (D.D.C. Jan. 25, 2013); *Wheaton Coll. v. Sebelius*, 887 F. Supp. 102 (D.D.C. 2012); *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25 (D.D.C. 2012) – and one court of appeals opinion from the D.C. Circuit, *see Wheaton Coll. v. Sebelius*, 703 F.3d 551 (D.C. Cir. 2012) – have held that jurisdiction is lacking over nearly identical challenges to the contraceptive coverage requirement. Of course, EOP recognizes that the court in the underlying action held that it has jurisdiction to consider plaintiffs' claims. For the reasons articulated in defendants' briefs in support of their pending motion for reconsideration or certification of an interlocutory appeal, and in light of the Supreme Court's recent decision in *Clapper v. Amnesty Int'l USA*, __ S. Ct. __, 2013 WL 673253 (Feb. 26, 2013), EOP respectfully disagrees with the court's conclusion. But regardless of the Eastern District of New York's view of subject matter jurisdiction in this case, pursuant to Federal Rule of Civil Procedure 45, any motion to compel production or quash the subpoena would be decided by the court that issued the subpoena – the U.S. District Court for the District of Columbia. *See* Fed. R. Civ. P. 45(c); *Houston Bus. Journal, Inc. v. Office of Comptroller of*

*Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996). Before enforcing the subpoena, the issuing district court would have to make an independent determination of whether subject matter jurisdiction exists in the underlying litigation, and would not be bound by the Eastern District of New York's ruling on this question. *See Houston Bus. Journal*, 86 F.3d at 1213 ("A district court lacks jurisdiction to issue a subpoena when a federal court has erroneously asserted jurisdiction over the underlying action."); *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988). The issuing court *would*, of course, be bound by the D.C. Circuit's ruling in *Wheaton College*, and thus would almost certainly conclude that it has no subject matter jurisdiction to enforce the subpoena. On this ground alone, EOP is not required to comply with the subpoena. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Even if the court issuing the subpoena had subject matter jurisdiction to enforce it, the scope of the subpoena is overly broad and therefore unduly burdensome in violation of Federal Rule of Civil Procedure 45(c)(1). The subpoena seeks documents from an extensive and ill-defined array of unnamed individuals, including "all entities, offices, and personnel that exist within EOP; the White House Office and all entities, offices, and personnel that exist, work, are employed, or are affiliated therein, including but not limited to the Office of Management and Budget, the Domestic Policy Council, the White House Office of Faith-Based and Neighborhood Partnerships, and the Council on Women and Girls; the Office of the Vice President and all entities, offices, and personnel that exist therein; all White House Staff, including the Chief of Staff, Deputy Chief(s) of Staff, Counselor(s) to the President, and Senior Advisor(s) and Special Assistant(s) to the President; and any employees, agents, agencies, subagencies, principals, representatives, or other Persons acting under the control or on behalf of any of the Persons identified herein." Subpoena at 2. The subpoena seeks not only documents in these unnamed individuals' actual possession, but also information that these individuals are "legally entitled or otherwise able to obtain . . . from another person." *Id.* at 4. It requests "any and all" documents, including any and all electronically stored information, that fall within 13 broad categories, many with sub-parts and largely without time limits. *Id.* at 2, 4. Moreover, although the underlying action challenges only the contraceptive coverage requirement, the subpoena seeks documents relating to all the preventive services encompassed within the Health Resources and Services Administration's guidelines. *Id.* at 3. And, the subpoena is not limited to documents concerning the current regulations, which are the only ones being challenged in the underlying action, but rather, purports to extend to "any amendments, changes, or supplements to the [regulations] as may be hereafter promulgated," *id*, as well as the Affordable Care Act generally, *id*. at 9. In short, it is hard to image a broader subpoena.

Such "everything under the sky" requests, *see Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 387 (2004), are improper in any context, but particularly so when directed at the President, the Vice President, and EOP. Even when EOP is a party to litigation, which is not the case here, the Supreme Court has recognized that "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery," and that "the Executive's constitutional responsibilities and status [are] factors counseling judicial deference and restraint in the conduct of litigation against it." *Id.* at 385 (quotations omitted). Courts must "give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Id.* at 382 (quotation omitted). In accordance with these principles, the Supreme Court has emphasized that the criminal subpoenas at issue in *United States v.*

2

*Nixon*, 418 U.S. 683 (1974), "were required to satisfy exacting standards of '(1) relevancy; (2) admissibility; (3) specificity.'" *Cheney*, 542 U.S. at 386. These "exacting standards" apply with even more force when a party is seeking civil discovery from EOP. *See id.* at 384 (explaining that "[t]he need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in *Nixon*"). EOP, moreover, does not "bear the onus of critiquing the unacceptable discovery request line by line." *Id.* at 388. "[J]ust the opposite." *Id.* The party requesting the information must demonstrate the clear relevance of the requested documents and explain why its claims cannot be fairly presented absent the requested documents. *Id.*; *see also, e.g.*, *United States v. Ehrlichman*, 546 F.2d 910, 932-33 (D.C. Cir. 1976), *cert. denied*, 429 U.S. 1120 (1977).

Plaintiffs cannot demonstrate the relevance of, or need for, *any* of the information they seek – much less satisfy the heightened and particularized burden that is applicable here. First, the information plaintiffs seek is not relevant, or necessary, because the underlying litigation challenges agency regulations, and thus, as a general rule, judicial review (even if jurisdiction existed) should be limited to the administrative record. *See e.g.*, *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963). And in this case, defendants have made it clear that the administrative record contains all non-privileged materials they considered in promulgating the contraceptive coverage requirement, and thus any discovery outside of that record is not relevant to plaintiffs' claims.

Furthermore, even if discovery beyond the administrative record were appropriate in this case, plaintiffs have provided no justification – as it is their burden to do exactingly and specifically – for extending discovery to EOP. And, there is none. Defendants have already provided plaintiffs with the administrative record, which contains all non-privileged material defendants considered in promulgating the challenged regulations. Plaintiffs have also sought, and defendants are in the process of producing, any other non-privileged material in the defendant agencies' possession that is responsive to the non-objected-to document requests plaintiffs have served on defendants.[1] It is impossible to fathom how any documents in EOP's possession (even assuming there are any) that defendants did not consider in promulgating the regulations and that are not otherwise in defendants' possession are relevant to plaintiffs' challenge to defendants' promulgation of the regulations.[2]

The subpoena also imposes an undue burden because it requests information that, even if relevant and needed, "can be obtained from some other source that is more convenient, less

---

[1] However, as you know, in seeking reconsideration or certification for an interlocutory appeal of the Court's ruling denying their motion to dismiss, defendants have already presented their view that the exceptional burden posed by the discovery that you have already requested in this case is particularly unwarranted given defendants' clear demonstration that the rule that you challenge will change imminently and will never be enforced against plaintiffs.

[2] Moreover, any documents concerning the NPRM or other aspects of the ongoing rulemaking, Subpoena at 3, 7, – which plaintiffs are not challenging here and cannot challenge in its current, non-final version – are not remotely relevant, or necessary, to plaintiffs' challenge to the current regulations.

3

burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also* Fed. R. Civ. P. 45(c)(1). Plaintiffs effectively concede as much by explicitly sweeping within their request documents that the EOP is "otherwise able to obtain . . . from another person." Subpoena at 4. Plaintiffs have already served extensive discovery requests on defendants, and plaintiffs have not shown that the information to be obtained from these sources is insufficient for any proper purpose. Moreover, Document Request No. 13, which requests "documents, communications, and statements by, between, with, or among [EOP], the President, and Cardinal Dolan," *id.* at 10, seeks information that, on its face, is available from a more convenient, less burdensome, and less expensive source, *i.e.*, Cardinal Dolan himself, who is the Archbishop of plaintiff Archdiocese of New York, Compl. ¶ 27.

EOP further objects to the subpoena on the ground that it seeks information that is protected by various recognized privileges, including, but not limited to, the presidential communications privilege, the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine. Indeed, by seeking from EOP documents concerning, for example, the "formulation," "drafting," and "consideration" of the regulations and policies that were "proposed, discussed, or considered," Subpoena at 7, many of the requests, on their face, call for material that is privileged. *See generally In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) (discussing presidential communications and deliberative process privileges). EOP also objects to the level of detail that the subpoena purports to require it to provide with respect to documents withheld as privileged, to the extent that it exceeds plaintiffs' legal entitlement. *See, e.g.*, Fed. R. Civ. P. 26; *Cheney*, 542 U.S. 367.

Finally, the undue burden imposed by the subpoena means that, even if EOP were to comply – and it will not for the reasons stated above – you have failed "to allow a reasonable time to comply" as required by Federal Rule of Civil Procedure 45(c)(3)(A)(i). The subpoena was issued on February 28, 2013, and requests the production of documents by April 1, 2013. Given the breadth of the subpoena and the nature of EOP operations, there is insufficient time to locate any responsive documents, review them for any applicable privileges, and produce any responsive, non-privileged documents.

Because EOP does not "bear the onus of critiquing [an] unacceptable discovery request line by line," this letter does not set forth every objection to every definition, instruction, or document request in the subpoena. The foregoing objections are not meant to be exclusive, and EOP reserves the right to assert further objections in response to the subpoena as appropriate.

Sincerely,

Benjamin L. Berwick

Benjamin L. Berwick
Trial Attorney
United States Department of Justice